Strout & al. *v.* Bradbury & al.

STROUT & AL. *vs.* BRADBURY & AL.

If the indorsement of a writ does not contain the whole christian name, and is not objected to by the defendant on that account, the indorser can not afterwards take advantage of this omission, to avoid his own liability.

Property lawfully in the possession of a deputy sheriff by attachment, cannot be taken out of his possession by another deputy of the same sheriff, under another writ.

Where a defendant, having judgment and execution for his costs, caused certain property to be taken in execution, which was replevied, but the replevin was not pursued;—it was held that his remedy against the indorser of the original writ was not impaired by his omitting to obtain judgment for a return, it appearing that this would have been fruitless, as the property was under a prior attachment.

THIS was a *scire facias* against the defendants, as indorsers of a writ. The plaintiffs declared that they were sued *Feb.* 9, 1825, by *George & Joseph Johnson* ; that the writ was indorsed by the present defendants by the name of " *Wm. & O. Bradbury,*" who were partners, doing the business of attornies at law under that name ; that at *March* term 1825, the suit against them was discontinued, and they had judgment for their costs ; that they sued out execution, and delivered it

40

to one *Leach,* a deputy sheriff, for service; who made return that he had taken a yoke of oxen and a horse as the property of *Joseph Johnson, April* 29, 1825, by order of *Fessenden & Deblois,* attornies to the creditors; which were replevied out of his hands *May* 3, by *Moses Hodgdon,* who gave bond to prosecute, according to law ;— that they sued out an *alias* execution *July* 29, 1825, and caused both the debtors to be committed to prison ; from which they were discharged upon taking the poor debtor's oath.

The defendants pleaded, first, that the writ against the present plaintiffs was not indorsed with the christian as well as surname of the indorser, according to the statute.

Secondly, that the defence of *Hodgdon's* action of replevin was confided to *Fessenden & Deblois,* the attornies of the plaintiffs, with their assent, and for their benefit ; but though *Hodgdon* did not enter his action, yet the plaintiffs' attornies entered no complaint, and obtained no judgment for a return, and commenced no suit upon the bond ; nor did they take any other measures to obtain a return of the property seized, or damages therefor ; though the property was sufficient to have satisfied the execution.

Thirdly, that *Leach,* by order of the plaintiffs, gave up to *Hodgdon* the goods he had seized in execution, which were sufficient to have satisfied the same.

The plaintiffs replied, first, that the writ was indorsed according to the statute. Secondly, that the oxen and horse, at the time they were taken by *Leach,* were already under an attachment made *March* 16, 1825, by one *Downing,* a deputy sheriff, as the property of *George Johnson,* by virtue of a writ against him at the suit of one *Hayes ;* who afterwards recovered judgment, and caused them to be taken and sold on execution, within the thirty days after judgment.

Thirdly, that the property was holden by *Downing,* as before, when *Leach* took it out of his possession.

To these replications the defendants answered by a general demurrer.

*Greenleaf,* in support of the demurrers, argued to the matter of the indorsement, that its vigor was wholly derived from the statute, which required the entire christian name, without which it was no indorse-

Strout & al. *v.* Bradbury & al.

ment at all. And the acquiescence of the other party is not to be regarded merely as a waiver of form ; but rather as a waiver of his right to require any indorsement. The statute liability attaches to nothing short of the whole name. *How v. Codman* 4. *Greenl.* 84.

Upon the other pleas he contended that the confiding of the defence of *Hodgdon's* suit to the plaintiffs' attorney, was in the nature of an equitable assignment of the rights of the other party under the bond ; and as such was accepted. The plaintiffs, then, having undertaken that matter, and abandoned it, must be understood to have waived their remedy on the indorsers of the writ. *Clark v. Clough* 3. *Greenl.* 357. They have not used the reasonable diligence, by which alone such claims are ripened to perfect rights. *Ruggles v. Ives* 6. *Mass.* 495.

*Fessenden* and *Deblois*, on the other side, said that the statute did not necessarily require the whole christian name of the attorney ; the words were satisfied by reference to the principal alone. But if it did, no one could take advantage of the omission but the party himself for whose benefit the provision was enacted. *Whiting v. Hollister* 2. *Mass.* 102. *Gilbert & al. v. Nantucket Bank* 5. *Mass.* 97.

The ulterior proceedings called for by the other pleas, they insisted, would have been altogether nugatory ; for had the property been returned to the plaintiffs, *Downing* would instantly have taken it away, by virtue of his prior attachment. *Walker v. Foxcroft* 2. *Greenl.* 270.

MELLEN C. J. delivered the opinion of the Court.

As to the question arising upon the first issue, we would observe that our revised statute *ch.* 59, *sec.* 8, provides " that all original writs issuing out of the Supreme Judicial Court, or Court of Common Pleas, or from a Justice of the peace, shall, before they are served, be indorsed on the back thereof by the plaintiff or plaintiffs, or one of them, with his christian and surname, if he or they are inhabitants of this State, or by his or their agent or attorney, being an inhabitant thereof." In its terms, the above clause does not require the indorsment of the christian and surname of the agent or attorney, though perhaps by a fair construction, the intention was to place both on the

same ground. By their first plea the defendants do not profess to deny that they wrote their name on the writ in the manner stated, but they allege that they did not thereby so indorse it as to render themselves liable under the statute. It is not to be presumed by the court that they made the indorsement in this manner with a view to evade the law. They were satisfied with it as a legal one, and as such we must believe they honestly intended it. An indorsement of a writ is a peculiar species of security, given by a plaintiff, for the costs which a defendant may recover in the cause; and which costs, in certain circumstances, the indorser may be compelled to pay. But being given for the benefit of a defendant, he is considered as satisfied and contented with the indorsement, as it appears on the writ, unless it is objected to at the return term. It does not appear that the present plaintiffs, who were defendants in the original action, made any objection to it, and, of course, we are well warranted in considering it as a contract, binding on one side, and accepted on the other. The first plea is therefore bad and insufficient.

In giving our opinion upon the remaining questions in the cause, we shall merely refer to the pleadings without a particular statement of them, inasmuch as in the argument, they have been considered as involving a general principle only; and such is the fact, and such the basis of our decision. It does not appear that either of the *Johnsons* had any other property than the oxen and horse in question. They were duly attached by *Downing* as the property of *George Johnson* in the suit of *Hayes* against him, *March* 16, 1825; and afterwards, on the 29th of *April* 1825, they were seized by *Leach*, another deputy sheriff, on the execution of the present plaintiffs against both the *Johnsons*, for the said costs; the oxen and horse then being holden by and in the possession of *Downing*, by virtue of his attachment. *Leach*, in his return, says they were supposed to be the property of *Joseph Johnson*. But as *Hayes* pursued his action to judgment, and within thirty days caused the oxen and horse to be sold on his execution, as the property of *George Johnson*; in the absence of all proof of ownership in any one else, we must take it to be the fact that *George Johnson* was the true and lawful owner at the time of the

Strout & al. *v.* Bradbury & al.

sale. This brings us to the two points in the cause, the examination of which will readily lead to its decision.

1. While the oxen and horse were holden by *Downing*, under *Hayes's* attachment, they were not liable to seizure on execution by *Leach*. *Walker v. Foxcroft* 2. *Greenl.* 270. and cases there cited. *Leach* was a trespasser in seizing them, and liable in damages to *Downing* for their value, or in repliven for the identical property, if not restored to him.

2. The second point is equally clear. Though *Hodgdon* replevied the oxen and horse from *Leach*, and did not prosecute the action; and though *Leach* did not enter his complaint, and obtain judgment for a return; and the present plaintiffs, through the agency of their counsel, were assenting to this course of proceeding, and the restoration of the property to *Downing*; still those circumstances do not in any manner impair the plaintiffs right to maintain this action. A judgment for a return of the property would have been wholly unavailing; if returned to *Leach*, it must have been restored by him to *Downing*, or damages equal to its value; and this amount must have been ultimately a charge upon the plaintiffs. They have not directly or indirectly yielded any thing to *Hodgdon*, or any one else, which they had a right to retain, or which, if retained, could have been available to them in a pecuniary point of view.

From this general examination of the pleadings and facts, we are perfectly satisfied that the replications are good.

*Replication adjudged good.*